[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff wife, 53, and the defendant husband, 52, married on July 26, 1969 in Stamford, Connecticut. They have two adult children. The plaintiff has resided continuously in Connecticut for over a year prior to starting this action for dissolution of marriage, thereby affording this court jurisdiction. Both are high school graduates. The plaintiff was also a licensed practical nurse when she married the defendant. The CT Page 7948 plaintiff stopped working when she became pregnant with their first child, who was born in 1972 and returned to part time work about 13 years later after both children were in school. She never returned to nursing for her license lapsed. She continued working part time until last year. Most recently she worked for the Census Bureau earning $5000. The plaintiff has several health problems. Her left eye has a condition called recurrent corneal erosion syndrome which recurs spontaneously, often upon awaking in the morning, typically having symptoms of a scratched cornea including extreme pain, tearing and blurred vision, (plaintiff's Exhibit 33). She also has migraine headaches, heart palpitations, low back pain/sciatic neuritis and basal cell carcinoma of the face that required surgical removal, (plaintiff's Exhibit #4). The court has concluded that the plaintiff is presently incapable of working on a fill time basis.
The defendant has been continuously employed by IBM, since February, 1969. He is currently a project manager earning a monthly gross of $6288 and, after taxes and health insurance premium deductions, and excluding a TDSP loan repayment, receives a monthly net of $4162. He has not received a raise in three years. He has been diagnosed with hepatitis C, presumably having had it for many years and in a large percentage of cases it progresses to cirrhosis. He is scheduled for a treatment program (defendant's Exhibit C).
The causes of the breakdown began many years ago when the defendant began to drink alcoholic beverages to excess, when he felt financial pressure in maintaining the home and then the loss of intimacy that has existed for the last fifteen years. The plaintiff attributed the final breakdown to the defendant's request for her signature on a home equity loan in 1999 that he renewed on a daily basis. The court finds the breakdown became irretrievable several years before. They stopped talking to each other ten years ago. The defendant did manage to pay the college expenses for their children, leading to loans being incurred. The defendant began an affair in December, 1998. The marriage had previously broken down completely. Venuti v. Venuti, 185 Conn. 156 (1981).
The parties have sold the marital home and equal parts of the proceeds have been released to each party, with court approval. The remaining balance still being held, listed on the plaintiff's financial affidavit, is $48,268. The defendant has a pending purchase of a condominium unit. The defendant has purchased a coop and has paid off the TDSP (401k) loan of approximately $17,000 with part of the marital home proceeds given to him. He had sold 600 shares of IBM stock, after this action was commenced, with his wife's knowledge and approval, and applied the proceeds to reduction of the credit union loan. He purchased an auto, after this suit commenced, which he values on his financial affidavit as worth $26,000, subject to a loan balance of $17,000. The court finds none CT Page 7949 of these actions violate the automatic orders.
The plaintiff lists little in other assets standing in her name, totaling $6000. The defendant owes $550 to the plaintiff for medical reimbursements. Other assets of the defendant consist of stocks and mutual funds totaling $16,500; his TDSP 401k account, containing $149,681 as of December 31, 2000; 725 shares of IBM stock (closing at $117.25 on 6/7/01) worth $85,006; a checking account containing $1,200 and a vested defined benefit pension containing two components, a core retirement benefit paid only on a monthly basis as a life annuity and a personal retirement provision (PRP) which may be received in a single lump sum or in a lifetime monthly payments upon retirement, (plaintiff's Exhibit 7). IBM provided the following estimates as of April 1, 2001. The defendant is retirement eligible and is entitled to receive $2669.68 monthly now upon immediate retirement. The PRP balance is $9257.91 or a monthly benefit of $102.87.
The court concludes that the defendant has the greater present earning capacity, that it is reasonably probable that he has the ability to acquire assets in the future and has better general health than does the plaintiff. Having reviewed the evidence in light of the relevant statute and case law, the court enters the following decree:
 1. Judgment is entered dissolving the parties' marriage on the ground of irretrievable breakdown. Each party is declared to be unmarried.
 2. The defendant shall pay to the plaintiff the sum of $2000 monthly as periodic alimony taxable to the plaintiff, until the death of either party, the plaintiff's remarriage or future court order. The term and amount are each modifiable. Payments shall be made in semi-monthly installments on the first and sixteenth of each month. The initial payment is due June 15, 2001. The court enters a wage withholding order. If not made contingent by agreement, the court shall hear the parties on the issue of an immediate wage withholding if the defendant objects to it, § 52-362(b).
3. The plaintiff is awarded 50% the defendant's IBM Retirement Plan. The attorneys for both parties are directed to cooperate in preparing a QDRO as outlined in plaintiff's Exhibit 7. The court retains jurisdiction to execute the final formal CT Page 7950 order.
 4. The plaintiff is awarded 50% of the defendant's TDSP 401(k) account. A QDRO shall be prepared if required as outlined in paragraph 3 supra.
 5. The plaintiff is awarded 363 shares of the defendant's IBM stock. The defendant shall retain the balance of his IBM stock and his other miscellaneous stocks valued at $10,351 on the affidavit.
 6. From the remaining proceeds derived from the sale of the marital home the plaintiff shall be paid $10,351 as compensation of the award to defendant if the miscellaneous stocks made in #5 supra. The remaining balance then shall be divided equally between the parties.
 7. The plaintiff shall retain the remaining assets in her name not previously ordered as her sole property and she shall be solely responsible for the liabilities she has listed on her financial affidavit.
 8. The defendant shall retain the remaining assets in his name not previously ordered as his sole property and he shall be solely responsible for the liabilities he has listed on his financial affidavit.
 9. The plaintiff shall have the option of acquiring ownership of the Prudential Life insurance policy, $100,000 face value by notifying defendant, care of his counsel, on or before August 1, 2001 of her election to accept assignment of ownership to her. The defendant shall immediately thereafter execute such forms as are necessary to transfer ownership. The plaintiff shall thereafter, as owner, be responsible for all subsequent premiums and after August 1, 2001, shall also own the cash surrender value of $6800 free of any policy loans. The defendant shall repay any such policy loans.
10. The defendant shall continue the plaintiff as CT Page 7951 primary beneficiary of 50% on his IBM group life insurance for so long as he is obliged to pay periodic alimony. This order is not an asset assignment and is subject to future review and modification upon any change in his employment status or in the group coverage.
 11. Each party shall be solely responsible for litigation expenses, attorneys fees and costs incurred by each party.
HARRIGAN, J.T.R.